### DICKEY v. KENNEY et al.

No. 26842. June 30, 1936.

Harley Ivy and Cham Jones, for plaintiff in error.

Guy Green, for defendants in error.

PHELPS, J. C. E. Kenney, by his agent Virgil Brown, was protestant before the Commissioners of the Land Office, commonly called the School Land Commission, and was then appellant in the district court of Jefferson county, and is now defendant in error in this court. It will make the statement of facts simpler if we call him A. The plaintiff in error, A. H. Dickey, was protestee before the School Land Commission, and appellee in the district court, where a verdict and judgment were returned against him, awarding a school land lease to Kenney and reversing the School Land Commission's refusal to sustain the latter's protest. We shall refer to the plaintiff in error, Dickey, as B. The facts may be stated thus:

A certain tract of state school land in Jefferson county was to be let for agricultural purposes for the year 1935, running from January 1st to December 31st, by a nonpreference right lease, meaning that no person or applicant for the lease had any preference right thereto over any other person.

A made a written application for this 1935 lease, on July 7, 1934. He left it in Lawton, Okla., with an appraiser for the School Land Commission, along with his check for $150, which was the amount of his bid. The appraiser recommended approval of the application, and filed it with the commission. It is conceded by all parties that the appraiser had no authority to bind the commission to the lease. The check remained with the commission, uncashed, during all of the subsequent related events.

On July 18, 1934, the commission received a bid of $175 from J. R. Goats, and on the same day informed A of that fact, by letter, and asked A if he desired to raise the bid. A did not reply.

On August 27, 1934, B made written application for the same lease, at $200, accompanying it with his check for that amount. The same appraiser who had recommended approval of A's application likewise recommended approval of B's application, which was filed with the commission. The commission did not in this instance inquire of A whether he desired to raise the bid. Matters standing thus, the commission cashed B's $200 check and a few days later exe-

cuted him the lease, which, however, was dated August 27, 1934, the same date as the application.

On September 14, 1934, A filed a protest with the commission (section 5567, O. S. 1931) against the aforesaid lease which had been awarded to B, and accompanying this protest he sent his check for an additional $50, leaving also his $150 check with the commission. Neither of these checks was ever attempted to be cashed. The protest was set for hearing, heard and denied, and A then appealed to the district court of Jefferson county under the provisions of section 5568, O. S. 1931, where the matter was heard de novo by a jury, which returned a verdict in A's favor, and B appeals.

The foregoing includes all of the material facts adduced at the trial in the district court. Other matters were testified to, such as a prior lease, for a previous year to Mr. Goats, which resulted from his prior application and payment of money therefor, which caused the commission to sustain his protest against another and award him the lease for that year, but that had no connection at all with the present controversy.

We are not informed whether it occurred to any of the parties, or to the commission, that the statutory authority for the lodging of protests against the decisions of that body had been repealed by the Legislature on April 26, 1933, well over a year before even the first application for this lease was filed. Section 14, chapter 91, Session Laws of 1933, p. 169, repealing section 5567, O. S. 1931. Section 5567 read in part as follows:

"The Commissioners of the Land Office shall have the power and authority to hear and determine any protest or contest growing out of any lease or assignment, and make such orders in relation thereto as the evidence and the law justify. * * * The commissioners * * * shall prescribe such rules and regulations and procedure as are necessary to carry into effect this section."

The foregoing section was repealed by the 1933 Legislature and nothing was substituted therefor. Was it thereby intended by the Legislature to take away the power of the commission to hear protests on its leases or assignments? Assuming that such was the intention of the Legislature, then was it within the power of the Legislature to forbid the commission from hearing or deciding such protests.—or does the commission have constitutionally derived inherent power, without the aid of legislative enactments, to consider such protests and, on the basis thereof, and on proper grounds, recall or cancel its former leases? We do not decide these questions in the instant appeal. They have not been briefed, and it is unnecessary at this time to decide them, for it is apparent to us that even had not the statute been repealed, or even if the commission had inherent power to entertain the protest, the verdict of the jury and the judgment of the district court, in the trial on appeal thereto, are entirely unsupported by evidence.

Section 5568, O. S. 1931, reads:

"From all decisions of the Commissioners of the Land Office an appeal may be taken by any person affected thereby to the district court of the county where the land is situated. Said appeals shall be taken by the appellant serving written notice upon the secretary to the Commissioners of the Land Office, within 15 days after the rendition of the decisions complained of, and by executing bond with sureties in such sum as the secretary shall prescribe, not to exceed double the annual rental of the land affected by such appeal, and not less than fifty dollars, to the effect that the appellant will pay all costs of such appeal, if the decision be adverse to him, and such damages as the court may award. Upon the giving of such notice and bond, the secretary to the Commissioners of the Land Office shall forthwith transmit to the clerk of the district court certified copies of the original papers in the matter appealed from, together with a transcript of the record of the commissioners relating to such cause. The district court shall hear and try said cause de novo, and from the judgment of the district court either party may appeal to the Supreme Court, as provided by law in civil actions."

It is well to remember that the appeal to the district court was from the decision of the commissioners on the protest, and not from their original awarding and executing of the lease to B. The appeal was specifically so worded, and indeed it must necessarily have been, for the time had long since passed within which an appeal could have been perfected from the latter. Therefore, because the appeal statute prescribes that the cause shall be tried de novo on appeal, the questions properly before the court in the de novo hearing were the same questions as were before the commissioners in the protest hearing. Stated broadly, those questions resolved themselves into whether the commissioners should revoke and cancel the lease executed prior thereto to B, for the sum of $200 already received from B, and possibly award it to the protestant, A, who had offered only $150 at that time, but who had raised his bid to the same amount, $200, on filing the protest. The commissioners refused to cancel the prior lease on this showing, but the jury took the opposite view and in effect struck down the contract validly

entered into between the commissioners and B, with, in our opinion, no evidence whatsoever to justify such action. The defendant in error, A, takes the position that because the appeal statute prescribes that the cause shall be tried de novo, the jurors are thereby sitting for the time being as Commissioners of the Land Office, and exercise the same discretion and powers.

We are not convinced that the jury under this statute could validly cancel the lease and award it to the opposite party without good cause; nor do we think that by the statute it was intended to create any exception to the rule in general that a verdict must be sustained by some competent evidence, else no appeal to the Supreme Court would have been provided for in the same section itself.

Certainly the jury, and the district court, are bound by the same law on the question as is the commission itself. Their powers could not in any event be any greater. Section 5508, St. 1931, as amended by section 6, ch. 91 of Session Laws of 1933, p. 163, reads:

"The Commissioners of the Land Office shall rent all lands of the state administered by them and not held under preference right lease, from year to year until sold, at the highest annual rental and upon the most favorable terms procurable. * * *"

This was not a preference right lease. Both A's and B's bids were cash bids, so there can be little question of which was the "best" (or better) bid, under the formula of the "highest and best bidder" usually made use of. The "highest annual rental" offered, at the time the lease was awarded, was by B, to whom it was awarded. Never did A bid higher, even on the protest. No fraud was alleged or shown in the obtaining of the lease, nor was there evidenced any misapprehension of the facts or misconstruction of the law on the part of the commissioners. It is obvious that the mere fact that A put in the first bid in point of time, or that the appraiser may have promised him that he would be awarded the lease, are of no moment, and the court in effect so instructed the jury. In short, there is nothing whatsoever in this record to explain the verdict, other than the conjecture that it was the mere whim of the jury.

The exact nature of the issues on the de novo trial of an appeal from a decision of the commissioners on a nonpreference right lease has been before this court but once, and then only indirectly, for the real question involved was the right to the appeal itself. This was in Sutherland v. Taintor, 57 Okla. 292, 156 P. 1174, in 1916, in which this court stated that the case was of first impression and that there were few if any landmarks to guide the trial court when he had instructed that the jury

"should carefully and impartially weigh and consider the evidence, facts and circumstances in this case and then, without fear or favor, make your award in harmony and accord with what your own conscience shall dictate to be right and just as between the parties."

The same instruction was given in the instant case. Since it was approved, or at least not condemned, in Sutherland v. Taintor, supra, the trial judge should not be criticised for giving it. Yet it appears that a verdict founded on the mere "conscience" of the jury, unaided by any instruction based on the guiding rules of law applicable to the particular case, and which verdict is based on a set of facts which considered in connection with the controlling law would require the opposite verdict, must necessarily be reversed. Otherwise, the law is set at naught. The law in this case requires that the lease be awarded for "the highest annual rental" (sec. 5508, as amended, supra). and there was no showing made by A, either in the protest hearing or on appeal, that such had not been done. Nor was there any showing of any irregularity in the obtaining of the lease by B. B was the highest bidder. He was a cash bidder. After the lease was awarded him, and he had in good faith parted with the consideration therefor, A filed his protest and raised his bid to the same amount.

Could it be that the "conscience" of the jurors, in accordance with the instruction, dictated that the commissioners should have sustained A's protest simply because he was the first bidder, or because the appraiser may have represented to him that he would be awarded the lease? If so, the conscience of the jurors was at variance with the controlling statute law on the subject.

The judgment is reversed and the cause is remanded, with directions to enter judgment for the plaintiff in error.

OSBORN, V. C. J., and RILEY, WELCH, CORN, and GIBSON, JJ., concur.